UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>A & F FIRE PROTECTION CO., INC.,<br><br>Defendant. | Civil Action No. 2:17-cv-4745<br><br>COMPLAINT<br><br>JURY TRIAL DEMAND |

## COMPLAINT

This is an action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. ("Title VII"), and Title I of the Civil Rights Act of 1991, 42 U.S.C. § 1981a, to correct unlawful employment practices on the basis of race, national origin, and retaliation and to provide appropriate relief to Timothy Hames ("Hames"), Ricardo Nunez ("Nunez"), John Webster ("Webster"), Ramon Luciany ("Luciany"), and a class of other similarly aggrieved black and Hispanic employees. As alleged with greater particularity in paragraphs 16 to 20 below, the U.S. Equal Employment Opportunity Commission (the "EEOC") alleges that Defendant A & F Fire Protection Co., Inc. ("Defendant" or "A&F Fire") discriminated against Hames, Nunez, Webster, Luciany and other black and Hispanic employees because of their race or national origin by subjecting them to race and national origin-based harassment—including slurs such as "nigger" and "spic"—thereby creating and maintaining a hostile work environment because of their race, black, or national origin, Hispanic in violation of Title VII. Defendant also violated Title VII by retaliating against Nunez by discharging him for filing an EEOC Charge of Discrimination, and by retaliating against Hames by constructively discharging him for engaging

in protected activity and for resisting Defendant's attempted termination of employees who had filed EEOC Charges.

## JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345. This action is authorized and instituted pursuant to Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. §§ 2000e-5(f)(1) and (3), and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2. The unlawful acts alleged below were committed within the jurisdiction of the United States District Court for the Eastern District of New York.

## PARTIES

3. Plaintiff, the EEOC, is the agency of the United States of America charged with the administration, interpretation and enforcement of Title VII and is authorized to bring this action by Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. §§ 2000e-5(f)(1) and (3).

4. At all relevant times, Defendant A&F Fire has continually done business in the State of New York, has been headquartered in Massapequa, New York, and has continuously had at least 15 employees.

5. At all relevant times, Defendant has been a corporation doing business in New York.

6. At all relevant times, Defendant has had at least fifteen (15) employees.

7. At all relevant times, Defendant has been an employer engaged in an industry affecting commerce within the meaning of Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000e-5(b), (g) and (h).

## ADMINISTRATIVE PREREQUISITES

8. More than thirty (30) days prior to the institution of this lawsuit, Hames, Nunez,

Webster, and Luciany filed Charges of Discrimination with the EEOC alleging violations of Title VII by Defendant.

9. The EEOC conducted an investigation of the Charges of Discrimination filed by Hames, Nunez, Webster, and Luciany.

10. On April 14, 2017, the EEOC issued to Defendant Letters of Determination finding reasonable cause to believe that Defendant violated Title VII by, among other things: a) harassing Hames because of his race, black, and then retaliating against him for engaging in protected activity, resulting in Hames' constructive discharge; b) harassing Nunez because of his national origin, Dominican, and retaliatorily discharging him for filing an EEOC Charge; c) harassing Webster because of his race, black; and d) harassing Luciany because of his national origin, Puerto Rican. The Commission further found that a class of similarly situated black and Hispanic employees was also harassed because of their race or national origin.

11. The EEOC invited Defendant to join with the EEOC in informal methods of conciliation to endeavor to eliminate its unlawful practices and provide appropriate relief.

12. The EEOC engaged in communications with Defendant to provide Defendant the opportunity to remedy the discriminatory practices described in the Letters of Determination.

13. The EEOC was unable to secure from Defendant a conciliation agreement acceptable to the Commission.

14. On June 27, 2017, the EEOC issued to Defendant a Notice of Failure of Conciliation for the Hames, Nunez, Webster, and Luciany cases.

15. All conditions precedent to the institution of this suit have been fulfilled.

## **STATEMENT OF CLAIMS**

16. Since at least 2013, Defendant engaged in unlawful employment practices in violation of Section 703(a)(1) of Title VII, 42 U.S.C. § 2000e-2(a)(1), by subjecting Hames,

Nunez, Webster, and Luciany to a hostile work environment consisting of ongoing severe or pervasive harassment because of their race or national origin. These unlawful practices include but are not limited to the following:

    a)     Nunez was employed with Defendant as a steamfitter from July 2012 until January 2015. Nunez was harassed because of his national origin, Dominican.

        i.     From approximately July 2013 to November 2014, Dominic Nappi ("Nappi"), who held the title of Supervisor, frequently called Nunez a "spic," "dumb spic," or "dumb-in-a-can," intentionally mispronouncing the word Dominican. Nappi also called Nunez a "wetback" on many occasions. Though Nunez is Hispanic, Nappi also frequently called Nunez a "nigger" or a "dumb nigger."

        ii.     As Supervisor, Nappi had the authority to take employment actions against Nunez, as well as all other field employees, including disciplining Nunez.

        iii.     Defendant did not have a policy or process by which employees could complain to management about race- or national origin-based harassment. Because of this, between approximately July 2014 and September 2014, Nunez complained about Nappi's harassment to his union on at least two occasions.

        iv.     Despite these complaints to the union, the harassment continued. Therefore, in October 2014, Nunez filed a charge with the EEOC asserting that he was being harassed because of his national origin.

4

    v.    The harassment continued after Nunez filed his October 2014 EEOC charge.

b)   Hames worked for Defendant from March 2013 until May 2015 and held the title of Assistant Superintendent. Hames was harassed because of his race, black.

    i.    In or around June 2013, Hames became aware of several employees, both subordinate and superior to him, who had named Hames in their mobile telephones as "BBG" or "Big Black Gorilla." These individuals included Dave Herrling ("Herrling"), Matthew Muth ("Muth"), a mechanic, and Vice President of Operations Brian Weinstein ("Weinstein"). At that time, Weinstein was Hames' supervisor, with the authority to fire Hames; Weinstein is also the nephew of Defendant's Owner, Kenneth Fulep ("Fulep"). These same individuals programmed their mobile telephones so that whenever Hames called them, a ringtone which consisted of the sounds a silverback gorilla makes and a voice which said "Big Black Gorilla is calling" would play.

    ii.    Soon after learning of this, in June 2013, Hames met in person with Fulep, Weinstein and Herrling. During this meeting, Hames called Herrling's mobile telephone and Fulep saw that Hames' name was saved as "BBG". Hames also called Weinstein's mobile telephone and the ringtone described above played for Fulep, Weinstein and Herrling to hear.

    iii. Despite Hames' complaint, Defendant failed to ensure that these employees and supervisors stopped using this racist ringtone. After complaining to Fulep, Weinstein and Herrling in June 2013, Hames heard the ringtone again on at least three more occasions between July 2013 and October 2014. One of these instances took place in August 2013, when Hames again heard the offensive ringtone coming from Weinstein's mobile telephone.

    iv. Throughout the course of his employment with Defendant, Hames heard employees and supervisors use the word "nigger" on more than a dozen occasions. Hames heard the term "spic" and the phrase "dumb in a can" (rather than Dominican) used by these same individuals dozens of times. Hames also heard the term "jigaboo" used at least seven times. While several employees and supervisors uttered these racial slurs in the workplace, the primary harasser was Nappi.

    v. Between June 2013 and March 2015, Hames verbally complained to Fulep on at least ten occasions regarding instances in which racist comments or racial slurs were directed at black or Hispanic employees. Approximately half of those complaints related to Nappi's harassment of black or Hispanic employees. Despite these complaints, there was no change in this behavior at the workplace.

    vi. Hames also told Nappi directly to stop using racial slurs in the workplace. Despite this, Nappi's behavior continued unchanged.

  vii. On at least two occasions, first around May 2013 and then around March 2014, Hames attempted to issue written warnings to two non-management employees who had used racial slurs in the workplace. However, Fulep ordered Hames not to do so.

  viii. The racial harassment never stopped. As late as April 2015, Hames heard Muth say, "We are finally getting rid of these niggers. They are like roaches, but we are getting them out."

c) Webster was employed by Defendant from January 2006 to December 2011 and then from August 2013 to May 2016. Webster was a mechanic. From at least August 2013, Webster was harassed because of his race, black.

  i. In 2013, Webster heard Nappi tell Nunez over the telephone, "You niggers are always complaining." When Webster began talking to Nappi on the telephone (rather than Nunez), Nappi told Webster to "put that nigger [referring to Nunez] back on the phone." The following morning, when Nunez and Webster were at Defendant's shop, Nappi told them, "You niggers don't understand."

  ii. In 2013, Webster told James Emig ("Emig"), a supervisor who worked closely with Fulep, that Nappi's race-based comments needed to be toned down. Emig responded, "That's Dominick [Nappi]."

  iii. Webster also heard the phrase "you people" used in the workplace on many occasions to refer to black and Hispanic employees, including on at least two occasions in 2014 and 2015 by Nappi in Fulep's

7

    presence.

  iv. On another occasion in 2014 or 2015, Nappi said in Nunez's, Webster's and Fulep's presence, "Those niggers need to change their attitude." Once again, Fulep was present but did nothing.

  v. In 2014 or 2015, Muth told Webster that Nunez "should be out there selling tacos or picking cotton."

  vi. In or around 2014, Webster heard Herrling tell Nunez, "You niggers need to go back to where you came from."

  vii. In or around 2014, Webster also heard Herrling ask a Hispanic employee who was eating a banana, "Do you think you could jump from limb to limb?"

  viii. Webster did not complain to upper management about Muth's and Herrling's harassing comments because he believed it would not do any good, given Emig's rejection of his earlier complaint about Nappi and Fulep's failure to respond when he witnessed Nappi using racial slurs. Further, Defendant did not have any anti-discrimination or anti-harassment policy or any complaint mechanism.

 d) Luciany was employed with Defendant as a helper from August 2014 to December 2014. Luciany was harassed because of his national origin, Puerto Rican.

  i. During his employment, there were approximately ten incidents in which a supervisor made a racist comment or slur targeted at Luciany or at other Hispanic or black employees. One of these supervisors

8

    was Nappi, who hired Luciany.

  ii. Luciany heard Nappi use racial slurs such as "nigger" and "spic. He also heard Nappi say, "You niggers are all lazy," and "You niggers always complain."

  iii. After Nappi's car had been broken in to, Nappi said to Luciany, "Probably one of your spic people did that."

  iv. Around November 2014, after another incident in which Nappi made another offensive comment, Luciany told Nappi, "Really? You're going to say that?" In response, Nappi shrugged his shoulders and walked away.

  v. In October 2014, Luciany heard Muth say, "We're running an immigration camp with the number of blacks and Hispanics working here." When Luciany told Muth he was not comfortable with Muth saying that, Muth told Luciany, "If you don't like it, you can leave." Muth was the individual who ultimately informed Luciany that he was terminated.

  vi. Defendant's failure to maintain an anti-discrimination or anti-harassment policy gave Luciany no ability to complain about the harassment other than by directly responding to the harassers, which complaints, as described above, were futile.

17. Since at least 2013, Defendant subjected other black and Hispanic employees to the same race- and national origin-based hostile work environment, detailed in paragraph 16 above, to which Hames, Nunez, Webster, and Luciany were subjected.

18. In 2014 and 2015, Defendant engaged in unlawful employment practices in violation of Section 704(a) of Title VII, 42 U.S.C. § 2000e-3(a), by discharging Nunez and constructively discharging Hames in retaliation for engaging in a protected activity, namely, by their complaining about workplace harassment, filing an EEOC Charge of Discrimination, and/or opposing retaliation against employees who filed an EEOC Charge of Discrimination. These unlawful practices include but are not limited to the following:

    a) Hames was retaliated against for complaining to Defendant of race- and national origin-based harassment and for refusing to take retaliatory actions against Webster and Nunez for having filed EEOC charges, resulting in Hames' constructive discharge.

        i. Since at least June 2013, as described in further detail in paragraph 16(b)(v) above, Hames complained to Fulep about the harassment occurring in the workplace on at least ten occasions. Despite these complaints, the racial slurs uttered by both supervisors and employees continued.

        ii. On or about March 12, 2014, the EEOC mailed a notice to the Defendant informing Defendant that Webster had filed a Charge of Discrimination.

        iii. In March 2014, after having received notice of the Webster Charge of Discrimination, Fulep asked Hames to fire Webster because Webster had filed a Charge with the EEOC. Hames told Fulep that his request was illegal and refused to fire Webster.

        iv. In the months that followed, Fulep began to retaliate against Hames

        by altering his job responsibilities, such as by reducing the scope of his supervisory authority and by taking away his company keys.

v. On September 22, 2014, Hames again complained to Fulep about the discriminatory treatment to which Defendant was subjecting him.

vi. On or about October 2, 2014, EEOC mailed a notice to the Defendant informing it that Nunez had filed a Charge of Discrimination asserting a racially hostile work environment.

vii. Shortly after October 2, 2014, Fulep met with Hames and requested that he fire Webster and Nunez in the next two months. Hames again refused.

viii. On or about October 17, 2014, Fulep converted Hames from a salaried employee to an hourly employee. Relatedly, Hames was no longer provided a regular work schedule as he had been in the past. In order to avoid a significant pay reduction resulting from this demotion, Hames was forced to use his accumulated vacation time.

ix. Around the end of March 2015, Emig told Hames that he could no longer report to work in Defendant's shop during business hours.

x. In the beginning of May, 2015, Hames spoke with Fulep and voiced his frustration that he was not being scheduled for 40 hours of work per week as he had been when he was a salaried employee. Fulep responded, "If you don't like how we do things around here, then quit!"

      xi. On May 4, 2015, Hames was constructively discharged. At that time, Hames believed that he had no choice but to end his employment with Defendant, given that Fulep had converted him to an hourly employee, reduced his work responsibilities and hours, did not provide him with a regular work schedule, and encouraged him to quit, all of which were in retaliation for Hames' refusal to fire Webster and Nunez and his complaints to management about the racial harassment.

b) Nunez was retaliated against for complaining to Defendant about the race- and national origin-based harassment and for filing an EEOC Charge, as Defendant terminated him for a pretextual reason soon after he made these complaints and filed his EEOC Charge.

    i. Between approximately July 2014 and September 2014, Nunez complained about the national origin-based harassment by Nappi to his union on at least two occasions.

    ii. On October 31, 2014, Nunez filed his perfected EEOC Charge of Discrimination asserting that he had been harassed because of his national origin.

    iii. On or about January 28, 2015, Defendant discharged Nunez even though throughout his employment Nunez performed satisfactorily.

    iv. While Defendant purportedly terminated Nunez because Nunez left a work site without advising a supervisor, this was a pretext for retaliation, as Nunez in fact did attempt to reach a supervisor on the

day in question.

19. The unlawful employment practices complained of in paragraphs 16 through 18 were intentional.

20. The unlawful employment practices complained of in paragraphs 16 through 18 were done with malice or with reckless indifference to the federally protected rights of Hames, Nunez, Webster, Luciany, and a class of similarly aggrieved black and Hispanic employees.

## **PRAYER FOR RELIEF**

WHEREFORE, the EEOC respectfully requests that this Court:

A. Grant a permanent injunction enjoining Defendant, its officers, successors, assigns, and all persons in active concert or participation with Defendant, from engaging in any employment practices that discriminate on the basis of race or national origin.

B. Grant a permanent injunction enjoining Defendant, its officers, successors, assigns, and all persons in active concert or participation with Defendant, from harassing its employees because of their race or national origin.

C. Grant a permanent injunction enjoining Defendant, its officers, successors, assigns, and all persons in active concert or participation with Defendant, from retaliating against its employees for engaging in a protected activity.

D. Order Defendant to institute and carry out policies, practices and programs which provide and ensure equal employment opportunities for black and Hispanic employees and which eradicate the effects of its past and present unlawful practices;

E. Order Defendant to make Hames and Nunez whole by providing appropriate back pay with prejudgment interest, in amounts to be proved at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices, including

rightful-place reinstatement or, alternatively, front pay;

F. Order Defendant to make Hames, Nunez, Webster, Luciany, and other similarly aggrieved black and Hispanic employees whole by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described above, in amounts to be determined at trial;

G. Order Defendant to make Hames, Nunez, Webster, Luciany, and other similarly aggrieved black and Hispanic employees whole by providing compensation for past and future non-pecuniary losses resulting from the unlawful employment practices described above, including, but not limited to, emotional pain, humiliation, and inconvenience, in amounts to be determined at trial;

H. Order Defendant to pay Hames, Nunez, Webster, Luciany, and other similarly aggrieved black and Hispanic employees punitive damages for its malicious and reckless conduct described above, in an amount to be determined at trial;

I. Grant such further relief as the Court deems necessary and proper in the public interest; and award the EEOC its costs in this action.

## **JURY TRIAL DEMAND**

The EEOC requests a jury trial on all questions of fact raised by its Complaint.

Date: August 14, 2017
New York, New York

Respectfully Submitted,

JAMES L. LEE
Deputy General Counsel

GWENDOLYN YOUNG REAMS
Associate General Counsel

U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
131 M. Street, N.E.
Washington, D.C. 20507

/s/ *Jeffrey Burstein*
JEFFREY BURSTEIN
Regional Attorney
U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
New York District Office
33 Whitehall Street, Fl. 5
New York, NY 10004
(212) 336-3770
jeffrey.burstein@eeoc.gov

JUSTIN MULAIRE
Supervisory Trial Attorney
U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
New York District Office
33 Whitehall Street, Fl. 5
New York, NY 10004

ROSEMARY DISAVINO
Senior Trial Attorney
U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
Newark Area Office
Two Gateway Center
Suite 1703
283-299 Market Street
Newark, NJ 07102
(973) 645-6430

KIRSTEN PETERS
Trial Attorney
U.S. EQUAL EMPLOYMENT

OPPORTUNITY COMMISSION
New York District Office
33 Whitehall Street, Fl. 5
New York, NY 10004
(212) 336-3671
kirsten.peters@eeoc.gov